BRONSON LAW OFFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530
H. Bruce Bronson, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:

    RED OAKS MILL CARPET CORP.

        Debtor

-----------------------------------------------------------------X

Case No. :15-36638 (cgm)

Chapter 11

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

RED OAKS MILL CARPET CORP., debtor and debtor-in-possession (the "Debtor") proposes the following Amended Chapter 11 plan of reorganization (the "Plan") pursuant to Title 11 of the United States Code:

### ARTICLE 1

### DEFINITIONS

For the purposes of this Plan, and the Amended Disclosure Statement (the "Disclosure Statement") simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under Sections 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) of the Code which may include Claims pursuant to Section 506(c) of the Code, including compensation for all professional services awarded by the Bankruptcy Court.

2. "**Allowed Claim**" means a Claim timely filed before the Bar Date of December 21, 2015 at 5:00 p.m., without being designated as contingent, unliquidated or disputed and (a) as to which no objection has been filed within the time fixed in this Plan or (b) as to which any objection that is filed has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

4. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto filed by the Debtor pursuant to Bankruptcy Rule 1007.

5. "**Bar Date**" means December 21, 2015, at 5:00 p.m., the date by which a proof of claim is required to be filed with the Clerk of the Court.

6. "**Cash**" means cash or cash equivalents (a) of the Reorganized Debtor on hand as of the Effective Date, (b) realized from the Debtor's business operations following the Effective Date, and/or (c) contributed or loaned by the holders of Equity Interests or officers.

7. "**Claim**" shall mean a right to payment as set forth in Section 101(5) of the Code.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Code**" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

10. "**Confirmation**" means approval of this Plan by the Bankruptcy Court under 11 USC § 1129 following a hearing and notice thereof in accordance with the Code and Bankruptcy Rules.

11. "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

12. "**Confirmation Order**" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Code confirming the Plan.

13. "**Debtor**" means Red Oaks Mill Carpet Corp.

14. "**Disputed Claim**" means:

    (a) any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and
    (b) any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

15. "**Effective Date**" means the date upon which the Confirmation Order becomes a Final Order.

16. "**Equity Interests**" means the equity interest in the Debtor.

17. "**Final Order**" means an order of the Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review or rehearing has been waived or (b) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

18. "**Governmental Bar Date**" means May 2, 2016 at 5:00 p.m. the day by which a proof of claim is required to be filed by a governmental unit.

19. "**Impaired**" means impairment of a class of claims or Equity Interests under Section 1124 of the Code.

20. "**Petition Date**" means September 2, 2015, the date on which the Debtor filed its voluntary Chapter 11 petition.

21. "**Priority Claim**" means all claims that are entitled to priority pursuant to Section 507(a) of the Code, other than Priority Tax Claims.

22. "**Priority Tax Claim**" means all Claims that are entitled to priority pursuant to

Sections 502(i) and 507(a)(8) of the Code.

23. "**Pro Rata**" means with respect to a class member, in the same proportion as the amount of such member's Allowed Claim over the total Allowed Claims in such class.

24. "**Reorganized Debtor**" means Red Oak Mills Carpet Corp. after the Effective Date.

25. "**Secured Claim**" means a Claim secured by a lien, judgment lien, mortgage or security interest on the real or personal property of the Debtor.

26. "**Secured Creditor**" means the holder of a Secured Claim.

27. "**Secured Governmental Claim**" means a Claim classified as secured by a Federal, State or local governmental unit.

28. "**Unsecured Claim**" means an Allowed Claim that is not entitled to a priority in bankruptcy, typically held by the Debtor's unaffiliated vendors.

29. "**Unsecured Creditor**" means the holder of an Unsecured Claim.

30. "**U.S. Trustee Fees**" means fees payable pursuant to 28 USC §1930.

All rules of construction contained in section 102 of the Code apply in the construction of the Plan.

## ARTICLE 2

### UNCLASSIFIED ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

Pursuant to Section 1123(a)(1) of the Code, the Plan does not classify Administrative Claims, including amounts owed to the US Trustees office, and Priority Tax Claims which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Administrative Expense Claims shall be paid in Cash on the latter of the Effective Date, or entry of an order of the Bankruptcy Court approving the same unless otherwise agreed upon by the parties. The primary Administrative Expense

Claims consist of professional fees and expenses for the Debtor's general bankruptcy counsel, Bronson Law Offices, P.C. Professional fees are to be paid pursuant to approved fee applications upon notice and hearing.

2. **Bankruptcy Fees**. Any unpaid US Trustee Fees and any applicable interest thereon shall be paid on the Effective Date.

3. **Priority Tax Claims.** Allowed Priority Tax Claims shall be paid in full in Cash over a period commencing on the Effective Date and ending on a date that is five years from the Petition Date in equal monthly installments bearing interest as provided in their respective proofs of claim. The Internal Revenue Service has filed a Priority Tax Claim of $17,126.19, bearing interest at the rate of 3% per annum. New York State has filed a Priority Tax Claim for sales and use tax in the amount of $22,631.98, bearing interest at the rate of 14.5% per annum and a Priority Tax Claim for withholding and corporate tax of $19,596.72, bearing interest at 7.5% per annum. The Department of Labor has filed a Priority Claim in the amount of $4,331.97, and an interest rate of 4% per annum has been applied.

Monthly payments on the Allowed Priority Tax Claims will be made as set forth below by the Debtor or Reorganized Debtor:

| **Claimant** | **Total Claim** | **Interest** (per annum) | **Monthly Payment** |
| --- | --- | --- | --- |
| IRS | $17,126.19 | 3% | 364.80 |
| NYS (sales and use) | $22,631.98 | 14.5% | 605.68 |
| NYS (withholding) | $19,596.72 | 7.5% | 457.56 |
| Dept. of Labor | $4,331.97 | 4% | 94.18 |
| | | **Total:** | **$1,522.22** |

# ARTICLE 3
# CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS

1. **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Priority Tax Claims.

   **Treatment**-The Allowed Priority Claims, if any, shall be paid in full in cash on the Effective Date. There are not expected to be any Allowed Priority Claims, other than Priority Tax Claims which are not included in this class.

   **Right to Vote**. Class 1 is not Impaired under the Plan and is not entitled to vote to accept or reject the Plan.

2. **Class 2-Secured Governmental Claims.** Class 2 consists of any Allowed Secured Governmental Claim.

   **Treatment-**The Allowed Secured Governmental Claims, shall be paid over a period of five years commencing on the Effective Date and ending on the date that is five years from the Petition Date in equal monthly installments bearing interest as provided in their respective proofs of claim. The Internal Revenue Service has submitted a proof of claim in the amount of $88,565.81, which it has classified as a secured claim, that bears interest at the rate of 3% per annum. A monthly payment of $1,589.60 would be paid by Debtor for a period of five years from the Petition Date to pay off this claim.

   **Right to Vote.** Class 2-Secured Governmental Claims are impaired and are entitled to vote.

3. **Class 3-Unsecured Claims.** Class 3 consists of the Allowed Unsecured Claims. The Bar Date for filing claims was December 21, 2015 at 5:00 p.m.

   **Treatment**-Allowed Class 3 Claims shall each be paid a dividend of 10% on a pro rata basis with 50% being paid on the Effective Date and 50% to be paid six months thereafter.

**Right to Vote**. Class 3-Unsecured Claims are impaired and thus entitled to vote.

Class 3 claims consist of the following:

| Claimant | POC No. | Amount Claimed | Amount to be paid |
|---|---|---|---|
| IRS | 4-2 | $7,307.07 | $730.71 |
| NYS | 1-4 | $5,330.59 | $533.06 |
| Gannet | 2 | $1,529.60 | 152.96 |
| Belknap White Group | Schedule F | 27,249.25 | 2,724.93 |
| Dal Tile Distribution | Schedule F | 1,551.79 | 155.18 |
| North Point | Schedule F | $413.50 | $41.35 |
| Pangia | Schedule F | $9,660.00 | $966.00 |
| JP Morgan Chase | Schedule F | [4,935.16] This amount was paid by the co-debtor and is no longer a liability. | 0 |
| Centrello | Schedule F | $11,370 | $1,137.00 |
| Royal Carting | Schedule F | $514.97 | $51.50 |
| Standard Tile Imports | Schedule F | $1,264.39 | $126.44 |
| Standard Tile Supply | Schedule F | $171.02 | $17.10 |
| Staples | Schedule F | $1,466 | $146.60 |
| Supermedia/Dexmedia | Schedule F | $268.18 | $26.82 |
| Poughkeepsie Journal | Schedule F | $1,529.60 | $153.06 |
| | Total | $69,355.96 | $6,935.59 |

4. **Class 4-Equity Interests.** Class 4 consists of the Equity Interest of Frances Elmendorf, the sole owner of Debtor. The holder of the Class 4 Equity Interests shall retain her interest in the Debtor. The holder of the Class 4 interest is unimpaired under this Plan and is deemed to accept the Plan.

**Treatment**- The Class 4 Equity Interest Holder shall contribute $5,000 to Debtor for new value and own 100% of the Debtor after the Confirmation of the Plan. If the Debtor does not have the cash funds available for the second payment on the unsecured debt, the Equity Interest Holder will contribute the funds necessary to make that payment.

**Right to Vote.** Class 4 claims shall have been deemed to accept the Plan and as insiders will not be entitled to vote.

## ARTICLE 4
## IMPLEMENTATION OF THE PLAN

Payments to the holders of Allowed Claims under the Plan will be made by the Debtor/Reorganized Debtor from (a) Cash on hand as of the Effective Date, (b) Cash realized from the Debtor's business operations following the Effective Date, and (c) Cash contributed or loaned by equity holders. Professional fees for services rendered by the Debtor's attorneys subsequent to the Effective Date in connection with the Plan or the Debtor's chapter 11 case, and reimbursement of expenses relating to such services may be paid by the Debtor without prior court approval, to the extent that section 1123(a)(6) of the Code is applicable.

## ARTICLE 5

## PROVISIONS GOVERNING DISTRIBUTIONS

**1. Disbursements.** All distributions under the Plan shall be made by the Debtor/Reorganized Debtor.

**2. Rights and Powers of the Debtor.** The Debtor shall be empowered to (i) execute all

agreements, instruments and other documents necessary to perform its duties under the Plan (ii) direct that all distributions contemplated by the Plan be made, (iii) prosecute, settle and enforce any objections or other causes of action on behalf of the estate, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

**3. Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, only the Debtor shall have standing to file and prosecute an objection to claims. All objections shall be filed and served no later than 90 days after the Effective Date of the Plan in accordance with the applicable provisions of the Code and Bankruptcy Rules. Frances Elmendorf and Lori Elmendorf as the principals of the Debtor have waived their claim for funds loaned to the Debtor.

**4. No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a claim under objections (i.e. a "Disputed Claim") until such Disputed Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead, any monies that would be paid if a Disputed Claim were Allowed shall be retained by the Debtor until such time as the claim is finally Allowed at which time such withheld Cash shall be paid to the holder of such Allowed Claim.

**5. Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is returned by the recipient of the distribution, then no further distribution shall be made to such creditor. Any undeliverable distribution shall revert to the Debtor. Debtor shall use reasonable efforts to locate holders of Allowed Claims.

## ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**1. Executory Contracts and Unexpired Leases.** To the extent the Debtor is a party to an executory contract or unexpired lease which has not otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the assumption

of such executory contract or unexpired lease pursuant to 11 USC §365. The Debtor has one lease where its store is located that it will assume.

## ARTICLE 7

## MISCELLANEOUS PROVISIONS

**1. Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Code, the Bankruptcy Court may enter one or more Orders in aid of implementation of the Plan.

**2. Compliance with Tax Requirements.** In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements.

**3. Due Authorization by Creditors.** Each and every creditor who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

**4. Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**5. Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**6. Computation of Time.** In computing any period of time prescribed or allowed by the

Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

      **7. Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

      **8. Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

      (a) to the Debtor at: Bronson Law Offices, P.C., 480 Mamaroneck Avenue, Harrison, NY 10528, Attention H. Bruce Bronson, Esq.;

      (b) If to any other creditor at (i) the address set forth on the respective Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor after the Effective Date; or (iii) the address reflected in the Bankruptcy Schedules if no Proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

      (d) if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

      **9. Governing Law.** The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

      **10. Other actions.** Nothing contained herein shall prevent the Debtor from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

      **11. Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or

all other provisions of the Plan.

      12. **Discharge**. On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in Section 1141(d)(6)(A) of the Code if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in Section 1141(d)(6)(B) of the Code.

## ARTICLE 8

## RETENTION OF JURISDICTION

**1. Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until the bankruptcy case is closed to perform the following actions:

      (a) Ensure that the Plan is fully consummated;

      (b) Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation.

      (c) Allow, disallow, determine, liquidate or classify, any secured or unsecured claims;

      (d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in the bankruptcy case;

      (e) Resolve any motions or applications still pending prior to the Effective Date;

      (f) Enter such orders as may be necessary or appropriate to implement or consummate the provision of the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with

the bankruptcy case; and

(g) Enter a Final Decree concluding the bankruptcy case.

## ARTICLE 9

## CLOSING THE CASE

**1. U.S. Trustee Fees.** All fees payable to the Office of the United States Trustee pursuant to 28 USC §1930 and any applicable interest pursuant to 31 USC §3717, shall be paid through the entry of a Final Decree, or conversion or dismissal of the Debtor's bankruptcy case, whichever is earlier.

**2. Post-Confirmation Reports.** After confirmation, the Debtor shall file quarterly status reports, and schedule such status conferences as may be necessary until the case is closed.

**3. Closing the Case.** Within 14 days following the full administration of the estate, the Debtor shall file, on notice to the United States trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

Dated: Harrison, NY
      May 8, 2016

**RED OAKS MILL CARPET CORP.**

/s/ Lori Elmendorf
Lori Elmendorf,
Vice-President

                                        Bronson Law Offices, P.C.

                                        by:/s/ H. Bruce Bronson
                                        H. Bruce Bronson
                                        General Bankruptcy Counsel
                                        *Red Oaks Mill Carpet Corp.*
                                        Debtor and Debtor-in-Possession